NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-857

STATE OF LOUISIANA

VERSUS

GREGORY TOMPLAIT, JR.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 12283-09
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Shannon J. Gremillion, Judges.

AFFIRMED.

John F. DeRosier
District Attorney, Fourteenth Judicial District Court
Karen C. McLellan, Assistant District Attorney
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
COUNSEL FOR APPELLEE:
    State of Louisiana

Annette Fuller Roach
Louisiana Appellate Project
P. O. Box 1747
Lake Charles, LA 70602-1747
(337) 436-2900
COUNSEL FOR DEFENDANT/APPELLANT:
    Gregory Tomplait, Jr.

**GREMILLION, Judge:**

Defendant, Gregory Tomplait, Jr., entered a plea of no contest to simple rape and was sentenced to twenty years at hard labor, without benefit of probation, parole, or suspension of sentence, to be served consecutively to any other sentence he may have been serving. Defendant filed a "Motion to Withdraw No Contest Plea and Set Aside Conviction, Sentence, and Sex Offender Registration, or Alternatively for Resentencing." The motion was denied.

Defendant appealed, asserting that his no contest plea should have been withdrawn based on three errors: 1) he may not have pled if he had properly understood how many jurors would sit in judgment, as well as how many guilty votes would be required for a conviction; 2) his plea may have been different if he had been advised that he would not be sentenced as a habitual offender; and 3) he would have reconsidered his plea had he been advised that he would be subject to sex offender registration. This court found Defendant's claims regarding the applicability of the habitual offender statute lacked merit. However, the matter was remanded to the trial court for an evidentiary hearing to determine if the inaccurate advice Defendant received regarding a majority verdict and/or the untimely notification of the sex offender registration and notification requirements and/or the trial court's failure to correctly advise him regarding the length of time he would have to register as a sex offender vitiated the voluntariness of his plea. *See State v. G.T., Jr.*, 10-1469 (La.App. 3 Cir. 6/15/11), 71 So.3d 394.

An evidentiary hearing was held on September 9, 2011, at which time the trial court denied Defendant's claims. Defendant is now before this court asserting that his no contest/*Crosby* plea was constitutionally infirm. This claim lacks merit.

## ASSIGNMENT OF ERROR

In his only assignment of error, Defendant contends his no contest/*Crosby* plea was constitutionally infirm. "The court is required to review the record as a whole and to look at the totality of the circumstances surrounding the plea to determine whether a guilty plea was free and voluntary and whether a defendant's waiver of rights was knowingly and intelligently made." *State v. R.A.L.*, 10-1475, p. 6 (La.App. 3 Cir. 6/29/11), 69 So.3d 704, 708.

*Majority Verdict Law*

In the original appeal, this court found the record clearly indicated that trial counsel incorrectly advised Defendant that he could be convicted of simple rape by a majority verdict and encouraged him to enter a no contest/*Crosby* plea based, in part, on that information. Accordingly, the record supported the finding that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.

This court went on to find that the record was not sufficient to make a determination of whether Defendant was significantly influenced by the inaccurate legal advice as required by the second prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). This court expressly declined to rule on Defendant's ineffective assistance of counsel claim because the record was inadequate and found the record also inadequate as to the question of whether Defendant's plea was infirm. Thus, the matter was remanded to the "trial court to further develop the record in this regard." *G.T., Jr.*, 71 So.3d at 398.

At the evidentiary hearing, Defendant testified that his attorney told him he had to have ten members of the jury vote in his favor to win the case. Defendant then stated he was not sure if he would have been able to "win with ten people . . . being I had to convince ten people instead of just six." Defendant then stated that

defense counsel kept telling him he had to convince ten people that he did not do anything wrong, and that was why defense counsel told him it was in his best interest to plead guilty.

Defendant testified that defense counsel had never discussed a six-man jury with him. Defendant further stated that the main reason he pled no contest was because he thought ten people would have to agree one way or the other. He said that if he knew there was only going to be a six-person jury, he would have done things differently.

Defendant next testified that DNA test results indicating his sperm was found in the victim did not influence his decision to plead no contest. When asked if the fact that his DNA was found weighed on his mind, Defendant said it did not because he had sex with his victim, his half-sister, but did not rape her.

The trial court denied Defendant's claim, stating the following:

> The court is satisfied that there is no reasonable probability that the result would have been different. I am satisfied that the evidence presented to the defendant about the gravity of the evidence against him was the overriding factor in making his determination to enter a plea of no contest to the charge. He explained his reasons for entering a no contest plea was that he didn't really want to admitted [sic] that he had had sex with his sister but, in fact, did, took [sic] advantage of the circumstances. And the consideration of whether it would have been a six-man jury or a twelve-man jury, to me, is insignificant; and I have no proof that the result would have been any different.

*Sex Offender Registration*

In his original appeal, Defendant argued that the trial court erred: (1) in not advising him prior to accepting his plea that he would be subject to sex offender registration and notification; and (2) in advising him incorrectly to register as a sex offender. This court noted Defendant's "Waiver of Constitutional Rights and Plea of No Contest" did not bear notice of the sex offender registration and notification requirements during the plea hearing. Also, the trial court did not advise

3

Defendant of these requirements. This court also noted that at the conclusion of the plea hearing, the trial court stated that the parties would return to complete the form. At the hearing held two days later, the trial court went over a notification form with Defendant, and he signed it.

This court further noted that the notification form incorrectly indicated that Defendant had to register for twenty-five years when, in fact, he was required to register for life. This court concluded that both the form and the trial court were in error as they advised Defendant that he had to register for twenty-five years.

This court went on to find the following:

> There is no evidence before this court regarding Defendant's knowledge of the sex registration requirements and its effect, if any, on the voluntariness of his plea. Similar to facts in [*State v.*] *Smith*, [08-127 (La.App. 5 Cir. 7/29/08),] 993 So.2d 659, the plea colloquy shows that the trial court did not advise him of the registration requirement prior to the acceptance of his plea, and there is no indication in the record that defense counsel notified Defendant of the requirement. Also, the notice of registration requirements is not contained in the guilty plea form as required by 15:543(A).
>
> Although Defendant did not assert a claim of ineffective assistance of counsel at the time of his motion to withdraw his plea, on appeal he claims that his counsel was ineffective. The record indicates that defense counsel was confused about the advice given to Defendant throughout the course of his representation of Defendant. Accordingly, considering the totality of circumstances surrounding Defendant's no contest/*Crosby* plea, we remand the matter to the trial court for an evidentiary hearing on the voluntariness of Defendant's plea and to allow him to withdraw his plea if the trial court determines it was involuntary or otherwise infirm.

*Id*. at 406.

At the evidentiary hearing, Defendant testified that his attorney never told him he had to register as a sex offender and that if he had known he had to register for life, he would not have pled no contest. Defendant testified that the forms he signed two days after he entered his plea indicated he had to register for fifteen

4

years.  Defendant testified that registration for life was like a life sentence and that he would not have entered the no contest plea.

Defendant testified that he heard the judge indicate that they would go over the form when he returned, but that there was no indication of how long he would have to register.  He admitted he did not ask any questions about what the judge's statement meant at that time.  Defendant was then questioned about the issue as follows:

> Q     Okay. So, that's a whole different issue. So, now you are assuming that your registration time, whether it's one year, three years, five years, or whatever, is going to be counted while you are in prison; and, so, if you got five years in prison and you had to register for ten, you would only have to register for ten (sic) years after you got out of prison, right?
>
> A     Yeah.
>
> Q     Okay. So, you knew it was coming --
>
> . . . .
>
> A     Yes, sir.
>
> . . . .
>
> Q     So, you knew it was coming.  You just didn't know how long?
>
> A     Yes, sir.
>
> Q     So, you just testified that you wouldn't have pleaded guilty had you known you had to register; but you did know you had to register. You just didn't know how it was going to work?
>
> A     I didn't know what registering really was. I mean, I didn't know. I have never had to register as a sex offender. I didn't know if -- that it -- is it going to have to be all the stuff that was on that paper where I couldn't -- I couldn't leave -- move without -- I didn't know exactly what registering meant. So, I didn't -- I didn't know nothing about a sex offender until I read the paper.
>
> Q     Your claim to this court and to the Court of Appeal is that you didn't even know you had to register, but you did know you had to register. You just didn't know all of the ins and outs of it?
>
> A     Yeah.

Defendant testified that he did not know he could say anything about the issue when he was going over the form and again stated he did not know he had to register prior to entering his plea. Defendant subsequently testified that he was aware that he would have to register because he had heard about it from others in jail. Defendant admitted that he went through the form with his attorney after the plea and signed the notification form that indicated he would have to register for twenty-five years. Defendant then testified that he thought registration consisted of placing an ad in the newspaper. Defendant testified he was thirty-four, had an eleventh grade education, and could read and write the English language.

After hearing Defendant's testimony, the trial court issued the following ruling:

> On the issue of whether or not the defendant knew that he was going to have to register as a sex offender, I find proof insufficient to find that he did not know. He indicates, by his own knowledge, that he was aware from other sources other than his attorney.
>
> The court has been fully familiar with the work of King Alexander, knows that he would have fully advised [G.T., Jr.] of the registration for notification for sex offenders, fully understanding that that was one of those statutes that is covered under the registration of sex offender laws . . . .
> . . . .
>
> Whatever it is. In addition to that, the court believes that the defendant knew, based upon my comments to him at the end, that we were going to do the form later on down the road. I have no clue how he could think that he didn't know anything about it.
>
> So, on that issue, his motion to withdraw his no contest plea is withdrawn.

The trial court then discussed the duration of registration as follows:

> That's what I am going to do. It's like a no harm, no foul kind of situation. The state had the opportunity if it thought it was incorrect to change it. They had an opportunity to review it. I generally ask if this is accurate for the time frame involved for the registration.

So, based on the testimony of Mr. Tomplait, it didn't matter to him whether it was 5, 15, 20, 25, or life, he considered it a life obligation; and when it started or whenever, really -- his testimony to me is like unbelievable as it concerns his knowledge of what was going to be in the sex offender notification requirements. But I am going to leave it like it is, for 25 years.

Defendant argues that the trial court did not address the fact that when defense counsel looked up the registration requirements two days after the plea, he was surprised to find that simple rape was considered an aggravated offense. Defendant asserts that implicit in the trial court's ruling was that he had the burden to ask questions about the details of the registration and notification requirements prior to entry of his plea, and his failure to do so did not affect the voluntariness of his plea. Defendant asserts that had defense counsel properly advised him of the registration and notification requirements before he entered his plea, defense counsel would not have been surprised two days later when the form was filled out. Defendant contends that the evidence contradicts the trial court's conclusion as to whether he had been properly advised of the registration requirements prior to entry of his plea. Defendant asserts that the untimely and incorrect notification undercut the voluntariness of his plea.

Defendant asserts that the registration requirements could be determined by simply reading the statute. Thus, the first prong of *Strickland*'s ineffective assistance of counsel analysis was met. Defendant asserts that the remaining prong, whether he was prejudiced by the failure of counsel to advise him of the requirements or the incorrect advice as to the requirements, must still be addressed. Defendant contends that the trial court did not specifically address this issue, other than its assumption that defense counsel had properly advised him.

Defendant argues that he entered a no contest plea without being properly informed of the number of jurors needed to obtain a guilty verdict, the fact that the

7

verdict had to be unanimous to convict, or the consequences of lifetime registration as a sex offender. He argues that, as a result, his plea is infirm and should be set aside.

The State asserts that a jury, regardless of its size, would not have found in Defendant's favor. Thus, it was the gravity of the evidence against Defendant and not the composition of the jury that was the overwhelming factor in Defendant's decision to enter the plea.

The State asserts that Defendant could not have been surprised by the sex offender notification requirement, as it was clearly understood to be part of his plea. The State asserts that if the Defendant did not think it was important enough to ask about registration requirements, it was obviously not factored into his decision to accept the plea. The State then addressed the length of registration, stating the trial court left the length of registration at twenty-five years. Therefore, the State argues that Defendant's argument regarding the length of registration is without merit.

At the plea hearing, the State indicated that Defendant would enter a plea of guilty to simple rape, a charge of D.W.I. third offense would be nolle prossed, and it would reject charges of improper lane usage and no driver's license in possession. The State also agreed not to file a habitual offender bill.

Defense counsel heard the recitation of facts and disagreed that the presence of Defendant's sperm led to the conclusion that he had sexual intercourse with his half-sister after she passed out. Defense counsel further stated the following: "But because they need only 10 jurors to convict him and with a habitual bill he was facing a minimum of 13 years, that's the sole reason why we are doing this." The trial court, after accepting Defendant's plea and setting a sentencing date, stated:

And we will come back . . . Thursday to go over the - -

8

. . . .

-- to do the notification of sexual offender form.

At the start of the hearing to go over the sex offender registration forms, the trial court indicated that Defendant's form had not been filled out. During the discussion of the registration requirements, defense counsel stated that he had to look up the statute and was not sure of the number of years registration was required. The trial court then informed Defendant that he would have to register for twenty-five years after his release from prison.

Defense counsel subsequently stated that the risk to Defendant under the habitual offender law and the majority verdict law figured heavily into his decision to have Defendant enter a no contest plea.

At the sentencing hearing, defense counsel stated that the reason Defendant entered a plea was because he had a third offense D.W.I. pending, and he had two prior felony convictions. At the hearing on the motion to withdraw guilty plea, defense counsel again stated the plea was entered "primarily" because of the threat of a habitual offender bill.

In *R.A.L.*, 69 So.3d 704, the defendant pled guilty, was sentenced, and then the State presented the sex offender registration form, which the defendant and the judge both signed. On appeal, the defendant argued he was not properly notified of the sex offender notification and registration requirements at the time his plea was entered. This court addressed the issue, stating the following:

> Reviewing the totality of the circumstances, we find there was no abuse of discretion in the trial court's ruling that the guilty pleas were knowingly and intelligently entered. We note that in the Motion to Withdraw Guilty Plea, it is set forth that the defendant was a special education student and did not understand the ramifications of his pleas or his options. The motion does not specifically claim he did not know he would have to register as a sex offender. At the hearing on that motion, however, it was established that the defendant is a high

9

school graduate. The defendant clearly and correctly explained the definition of "best interest" when questioned regarding his understanding of a "best interest plea." Although he denied knowing he had to register as a sex offender upon his release, he did not testify that he would not have entered these pleas had he known of that. He voiced no objection during the guilty plea colloquy based on any lack of knowledge. When given the opportunity by the court to bring forth any issues near the end of the taking of the plea he said nothing. Although his sister testified that he consistently, throughout the plea, indicated he did not want to plead guilty, this is not supported by the record before us and is not supported by the testimony of his attorney.

It is clear that the defendant maintains his innocence, hence the *Alford* plea. It is also clear from a review of the record and the testimony that the defendant decided to plead guilty after realizing his oldest daughter was going to testify against him and that testimony had been ruled admissible at the La.Code Evid. art. 412.2 hearing. It is clear from a review of the record that his motivation in entering the plea was to avoid a life sentence on the charge of aggravated rape and, by his own statements, to keep his daughters from having to testify.

*Id.* at 709-10.

In *State v. Anderson*, 44,093 (La.App. 2 Cir. 4/8/09), 6 So.3d 1069, the defendant argued that his guilty plea was involuntary because the trial court failed to notify him of the requirement to register as a sex offender. The second circuit denied the defendant's claim stating the following:

[I]n the present case, the defendant's retained counsel appeared in court with the defendant on April 18, 2006, and represented the defendant continuously through sentencing. Further, defendant did not plead guilty until April 1, 2008, giving defense counsel time to prepare for trial and to inform defendant of the consequences of pleading guilty. There was no indication from the testimony elicited at sentencing that the victim's statements were inconsistent. The only deficiency is the failure of the court to notify the defendant of the registration requirements of La. R.S. 15:542. Further, the defendant testified that he was aware of those requirements during the sentencing hearing. Accordingly, we find no merit in the argument that the trial court's failure to give such notice to the defendant should result in the involuntariness of the guilty plea absent other circumstances indicating that the plea was not knowing and voluntary.

*Id*. at 1071-72.

In *State v. Smith*, 09-769 (La.App. 5 Cir. 3/9/10), 38 So.3d 894, *writ denied*, 10-843 (La. 11/5/10), 50 So.3d 812, the defendant asserted that the trial court erred

in denying his motion to withdraw his guilty plea. The fifth circuit denied the defendant's claim, stating the following:

> We find the record in the present case demonstrates defendant's guilty plea was knowing and voluntary despite the fact he was not advised of the sex offender registration requirements. Defendant received a very favorable plea bargain. His charge of aggravated rape was reduced to forcible rape. As such, his sentence was reduced from a possible life sentence to 25 years. Additionally, the State agreed not to file a multiple offender bill against him. During the plea colloquy, defendant was advised of the nature of the charge to which he was pleading and his right to a trial by jury, his right to confront witnesses against him, and his right against self-incrimination. Defendant stated he understood his rights and that he wished to waive them. He was advised of the sentencing range for forcible rape and was told he would receive a 25-year sentence on the waiver of rights form Defendant further stated he was satisfied with his attorney. Although defense counsel moved for a continuance on the morning of trial, it was not on the basis he was unprepared for trial and the record shows defense counsel effectively represented defendant.

*Id*. at 899.

The record in the present case demonstrates that Defendant's no contest plea was knowing and voluntary despite the fact that he was told he would be tried by a jury of twelve, not advised of the sex offender registration requirements prior to entry of his plea, and was told he would have to register for twenty-five years. Several times throughout the proceedings, defense counsel stated that Defendant was primarily pleading guilty because the State agreed not to file a habitual offender bill. Additionally, the trial court mentioned the sex offender registration form at the plea hearing, and Defendant failed to ask any questions about registration or notification. Further, he voiced no objection to those requirements at the hearing wherein he was informed of the registration and notification requirements. Moreover, Defendant received a very favorable plea bargain

wherein the State agreed not to file a habitual offender bill and dismissed a charge of D.W.I. third offense.[1]

For the conviction of simple rape, Defendant was exposed to a sentence of up to twenty-five years and received a sentence of twenty years. If he was found to be a third-felony offender under the habitual offender statute, Defendant could have been sentenced to serve sixteen to fifty years for simple rape. La.R.S. 14:43; La.R.S. 15:529.1(A)(3)(a). Additionally, if Defendant was convicted of D.W.I. third offense and adjudicated a fourth offender under the habitual offender statute, he could have been sentenced to serve twenty years to life. La.R.S. 14:98; La.R.S. 15:529.1(A)(4)(a).

Based on the totality of the circumstances set forth in the record, we find that Defendant's plea was knowingly and voluntarily entered. Thus, his assignment of error lacks merit.

## DISPOSTION

Defendant's conviction is affirmed.

**AFFIRMED**.

---

[1]Defendant was convicted of simple burglary in 2002 and theft of goods in 2005.

12